W. P. L. MUIR, Administrator, Appellee, v. M. J. MILLER, Appellant.

1. **Replevin: COUNTERCLAIM.** A father at the age of eighty years, having six children, and three grandchildren by a daughter then deceased. and having determined to make division of his property among his heirs before he died, summoned those of his heirs lving near him to meet with him on a day named, when he separated his property into seven shares, in accordance with the provisions of a will previously made, and delivered to the heirs present, among whom was the defendant, their shares in notes and securities, and intrusted the shares of the absent heirs to those present for delivery, which was duly made. A few months after this the father died, and the administrator having commenced this action to recover the notes and securities received by the defendant, upon the ground that the father, at the time of the distribution, was entirely incapacitated to transact any business, and was prevailed upon to make the same through undue influence, the defendant answered, setting up the above facts. and that there were no debts owing by the estate, and by cross-petition sought to have his right to the property in question quieted in himself, and asked that the case be consolidated with another action, to which he was not a party, and be transferred to the equity side of the docket, and tried as an equitable action. *Held*, that a demurrer to the cross-petition was properly sustained as being in the nature of a counterclaim, which under section 3226 of the Code cannot be pleaded in actions for the recovery of specific personal property

3. ———— : CONTRACT : RESCISSION. At the time of the distribution of his estate the father received a bond from the heirs to support him during the remainder of his life, but nothing was ever done under it, and the plaintiff made no offer to return the same before commencing this action. *Held*, that the father being dead the obligation for support was at an end, and its return was not necessary to the right of action herein.

3. ———— : EVIDENCE: TRANSACTIONS WITH PERSONS DECEASED. At the meeting when the distribution was effected there was a general conversation between the father and those present, among whom was the wife of the defendant. *Held*, that the wife was disqualified from testifying to such conversations under the provisions of section 3639 of the Code.

4. ———— : ———— : ————. One of the heirs, however, who was interested in the division of the property, but not in this action, and whose interest was contingent and uncertain, *held*, to be a competent witness as to communications and transactions between himself and the father.

5. ———— : CONTRACT : UNDUE INFLUENCE. Testimony that the father told a witness, that "the boys wanted him to divide up his notes," *held*. competent upon the question of undue influence as against the defendant, although the latter was not shown to be one of them.

6. ———— : INSTRUCTIONS : UNDISPUTED FACTS. Where a fact necessary to the plaintiff's cause of action is so established as to be beyond dispute, the court may properly refuse to instruct the jury as to the necessity of proof of such fact.

*Appeal from Van Buren District Court.*—HON. D. C. LEGGETT, Judge.

WEDNESDAY, JANUARY 28, 1891.

THE plaintiff is the administrator of the estate of Samuel J. Miller, deceased, who died in February, 1885, intestate, leaving no widow. He was the father of seven children,—a daughter, whose death preceded his; and six sons, who survived him, namely, T. J., S. J., M. J., George, John and William. The daughter left three children surviving her, namely, A. and George Carnes and Mary Scotten. On the twelfth day of September, 1884, Samuel J. Miller, being then eighty years of age, executed his last will and testament, by which his estate was divided into seven equal parts, each part of

the value of forty-five hundred and ninety-two dollars and ninety cents. His entire estate was personal, except a tract of land in Missouri, of the value of three hundred dollars. The will gave to each of the sons one share, and of the seventh share it gave to each of the grandchildren three hundred dollars, and the remainder of such share was to be divided equally between his sons, M. J. and William Miller. Samuel J. Miller afterwards concluded to divide his property during his life, and for that purpose summoned those of his heirs living near him, namely, Thomas, M. J., John and Samuel, to meet with him on the tenth and eleventh days of October, 1884, and his property was separated into distinct shares, as specified in the will, and to those present the shares as provided in the will were delivered and possession taken, the property consisting entirely of notes and securities, except the land mentioned. Of the shares of the absent heirs, that of George was delivered to Samuel for him; and that of William to T. J. for him; the notes and securities being properly assigned by the donor. He then selected and assigned to A. Carnes and Mary Scotten each three hundred dollars in notes, and gave them to Thomas to be delivered to them. He also executed a deed for the Missouri land to George Carnes, and delivered it to him, and the same was duly recorded. Each of the heirs has received the share allotted to him or her, and still retains it. After the division and delivery of the property as above stated, Samuel J. Miller destroyed the will made by him September 12, 1884.

The plaintiff, as administrator, brings this action to recover the specific personal property received by defendant from his father, and as grounds for recovery states : "That, at the time hereinafter stated, and for a long time prior thereto, said intestate was enfeebled in body and mind, and entirely incapacitated to transact any business of importance, especially that of deeding or giving away his property ; that on or about the tenth day of October, 1884, the said defendants, taking advantage of the incapacity of said intestate, and by

persuasion and undue influence, wrongfully obtained from him a large amount of money, promissory notes, mortgages, accounts and securities of the aggregate value of sixty-four hundred and thirty-nine dollars and fifty cents at the time they were so obtained, a more particular description of which the plaintiff is unable to ascertain or give."

The allegations of the petition are denied, and in an "answer and cross-petition" the defendant sets out the facts in substance as above stated, with other facts not important to recite, other than that there are no debts against the estate; that like suits are pending against some of the other heirs, and some of the heirs are residents of other states, and have with them the property received by them.

The cross-petition asks relief as follows: "Wherefore, this defendant prays that this case be consolidated with number 1,938 on this docket, and that the issues on this cross-petition and of the cross-petition number 1,938 be heard and determined at the same time, and that equity take jurisdiction of the matters involved in the action, as well as number 1,938, and that the issues herein as well as therein be heard and determined and a decree be entered and rendered confirming the validity of said division, quieting the rights of defendant to the property rights and credits transferred to them in said division, and that each and all of the defendants hereto, and plaintiff, also, be barred and forever estopped from disputing the same, and be perpetually enjoined from ever hereafter disputing the validity of said division for any cause whatever, and that said defendants' rights thereunder to the property transferred by decedent to this defendant be quieted and confirmed, and for such other and further relief as may be just and equitable, and for costs."

To the cross-petition plaintiff demurred, and the demurrer was sustained by the district court. The issues presented by the petition and the denials in the answer were then tried to a jury that returned a verdict for the

plaintiff for twenty-two hundred and twenty-seven dollars, on which the judgment was entered, and from that judgment the defendant appeals.—*Affirmed.*

*Sloan, Work & Brown* and *McCord & Johnson,* for appellant.

*Wherry & Walker* and *E. L. Burton,* for appellee.

GRANGER, J.—I. It is insisted to us that the action of the district court in sustaining the demurrer was error. A ground of the demurrer is that "the facts therein stated show that the cause of action as therein stated is not a proper subject of equity jurisdiction." It is not to be seriously questioned that the relief sought in the cross-petition is in the nature of a counterclaim. It asks affirmative relief in favor of the defendant against the plaintiff, and is a cause of action connected with the subject of the action brought by the plaintiff. Code, sec. 2659, subd. 2. As before stated, this is an action for the recovery of specific personal property. Section 3226 of the Code is in the chapter "Of actions for the recovery of specific personal property," and provides: "The action shall be by ordinary proceedings, but there shall be no joinder of any cause of action not of the same kind, nor shall there be allowed any counterclaim." An equitable counterclaim pleaded in an action for the recovery of specific personal property is certainly "not a proper subject of equity jurisdiction," for it is forbidden by the statute. The question does not admit of elaboration, and the district court did not err in sustaining the demurrer.

1. REPLEVIN: counterclaim.

II. The prominent question of fact in the case arose under the allegation by the plaintiff that S. J. Miller was "enfeebled in body and mind, and entirely incapacitated to transact any business of importance, especially that of deeding or giving away his property," and that the defendants took "advantage of the incapacity  * * *

2. ——: contract: rescission.

and, by persuasion and undue influence, wrongfully obtained" the property. At the close of the plaintiff's direct testimony the defendant moved the court to direct a verdict for the defendant, assigning as reasons therefor that the evidence failed to show the condition of mind or influence as alleged to an extent to justify a recovery, which the court refused, and the appellant complains of its action. The questions thus presented have received careful consideration, and the point may be dismissed with the statement that we believe under the rule so often announced, the evidence to be such that this court should not interfere with the action of the court below.

A further ground of the motion is that "there is no evidence of a legal rescission of the assignment or tender back to defendant." When the assignment or division of the property was made the sons gave back to the father a contract in writing to support him during his life, but nothing was ever done by them in pursuance of it, and there has been no offer by the plaintiff to return the contract. The motion has reference to the return of this contract. The point is not well taken. The father being dead, the obligation for support is at an end, and was at the commencement of the suit. There is, in legal contemplation, nothing to return.

III. Ettie Miller is the wife of the defendant, and was present at the time of the division of the property, 3. ——: evidence: and aided in ascertaining the amounts by transactions with persons computing interest, and there was a gendeceased. eral conversation between the father and those present, sometimes one talking to him and sometimes another, but the communications were not what should be called communications between him and any particular person. The parties were to confer with him in regard to the division of the property, and the communications were generally between him and all that were present, and in a sense that they were personal as to all. Ettie Miller was one of the number, and the court refused, on the objection of the plaintiff, to allow

her to state some of the conversations, and we think
correctly. Being the wife of the defendant, she was
disqualified, under Code, section 3639. The cases of
*Lines v. Lines*, 54 Iowa, 600, and *Smith v. James*, 72
Iowa, 515, are not in point.

IV. Thomas Miller was a witness for the plaintiff,
and, against objections by the defendant, was allowed

4. THE same. to testify as to communications and trans-
actions between himself and the father.
There was no error in this. He is not a party, nor has
he any interest to disqualify him under code, section
3639. He is, of course, an heir, and was interested in the
division of the property, but not in this suit. Any
interest he may have is contingent and uncertain.
*Wormley v. Hamburg*, 40 Iowa, 22, and *Zerbe v. Reigart*,
42 Iowa, 229.

Some fifteen or twenty days after the division of
the property, because of some talk or feeling about who
received the balance of the seventh share after what
was paid to the children of the daughter, Thomas
procured his father to sign a certificate that neither he,
Samuel, John nor George received any part of it.
Thomas was allowed to state in evidence a conversation
he had with the defendant about the paper, and that
he (Thomas) took the paper, after the talk to his
father, and burned it in his presence. A copy of this
paper was put in evidence, of which there is complaint,
and it seems to us that the testimony was immaterial as
bearing on any issue involved. It had no bearing on
the condition of the father or the fact of undue influ-
ence; but we do not see how prejudice could have
resulted. The fact as to who received the excess of the
seventh share otherwise appeared in the case. The
point is not controlled by the rule in *Bixby v. Carskad-
don*, 70 Iowa, 726.

V. Mrs. Elizabeth Miller testified to conversations
she had with her father, in which he said the boys

5. ——: contract: wanted him to divide his property, and
undue influ-
ence. this question was asked: "Did he make
any statement as to which one of the boys

wanted him to divide up his notes before he did so? *A.* Yes; he told me the boys wanted him to divide up his notes." A motion to strike the answer, because incompetent, was overruled, and rightly so. It is urged that there is nothing to show that James was one of the "boys to whom he alluded," but that would make no difference. If he was in such a condition of mind that because of undue influence his gift was invalid, the fact that there was not a concerted effort or conspiracy to influence him would not affect the result, nor would it that only a part of the "boys" influenced him to make the division or gift.

VI. Complaint is made of a neglect or refusal to instruct that a demand for the property was necessary before the action could be brought. An instruction to that effect was asked and refused, but the fact was unquestioned in the proof, and the court had the right to treat it as an established fact in the case, which it did.

6. ——: instructions: undisputed facts.

Some other questions are presented as to evidence and instructions that we need not consider, as they relate to the sufficiency of the testimony, and as to which our opinion is expressed in the second division of the opinion. Some of the questions urged in assignments have reference only to questions arising under the allegations of the cross-petition to which the demurrer was sustained, and do not properly arise under the issues presented to a jury.

The judgment should be and is AFFIRMED.

### SUPPLEMENTAL OPINION.

#### TUESDAY, JUNE 2, 1891.

GRANGER, J.—It is perhaps due that one point presented by a petition for rehearing should receive notice in an additional opinion. In the first division of the opinion it is held that the cross-petition, to which a demurrer was sustained, presented a counterclaim. The correctness of the holding is vigorously assailed,

and, as authority against the holding, we are referred to *Stuart v. Hines*, 33 Iowa, 60 ; *Burroughs v. McLain*, 37 Iowa, 189 ; *Walker v. Land Co.*, 66 Iowa, 751 ; *Kavaleir v. Machula*, 77 Iowa, 121 ; *Haywood v. Seeber*, 61 Iowa, 574. These cases, in the main, hold to a rule like this : ' That where facts pleaded are intended as defensive matter only, but a relief is asked which such defensive facts would authorize, it will not be regarded as a counterclaim. In most, if not all, of such cases, it will appear, upon examination, that the relief asked would result, by legal operation, as well without as with the prayer for relief. In none of the cases referred to does it appear that a counterclaim was intended, which is not true of the case at bar. In view of our statute, we need not consider the technical definition of the terms, "counter" and "counterclaim." An amendment to the answer is entitled, "Additional answer and cross-petition." The plaintiff's petition in this case seeks recovery from the defendant because he obtained the property from Samuel J. Miller when he was in such a condition of mind that he was incapacitated to contract or transact business. The cross-petition is too lengthy to reproduce in an opinion, without a more urgent demand than appears here, but it is there claimed that, "even though it should be found that the decedent was not, at the time of said division, of sound mind, or that the division was made by reason of undue influence," still, because of other facts that are recited in the cross-petition, it is claimed the defendant should have the title confirmed in him, and to that end have the cause consolidated with other causes, in which this defendant is not a party, and the cause when consolidated tried by equitable proceedings, and the title of other property determined against the plaintiff. Thus the cross-petition not only seeks to change the kind of action, but the parties and the subject-matter of the action, and the judgment sought is one that could not be obtained under a merely defensive plea. The prayer asks an adjudication on the cross-petition, while the answer in other parts and respects pleads defensive

matter. It is not the office of a cross-petition to plead defensive matter, but to present a cross-demand. Under the revision, a cross-demand was recognized, and was new matter pleaded by the defendant against the plaintiff, and on which the defendant might have brought an action when the suit was commenced. Revision, sec. 2891. If the cross-petition presents a cause of action,—which we may assume,—it is an action that the defendant might have brought against the plaintiff, independent of this suit, to settle the title to the property against his claim to it as administrator. The section of the Revision, by which certain facts constitute a cross-demand, is copied into the claim. Code, sec. 2659. The cross-petition is, both in name and substance, something more than a defensive plea. It presents a cross-demand, and a cross-demand, under the Code, is a counterclaim. A counterclaim cannot be pleaded to an action of this kind.

The petition for a rehearing is OVERRULED.